10 CV 9053

JUDGE SWEET

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AHMED ARFA, Individually And On Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) vs. ) ) MECOX LANE LIMITED, NEIL NANPENG ) SHEN, JOHN J. YING, PAUL BANG ZHANG, ) ALFRED BEICHUN GU, KELVIN KENLING ) YU, ANTHONY KAI YIU LO, DAVID JIAN ) SUN,  UBS AG, and CREDIT SUISSE ) SECURITIES (USA) LLC, ) ) Defendants. ) ) ) | **CIVIL ACTION NO. _____** **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**  **JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the purchasers of Mecox Lane Limited ("Mecox" or the "Company") common stock pursuant to its October 2010 Initial Public Offering ("IPO" or the "Offering") of 11,742,857 American depositary shares ("ADSs"), each representing seven ordinary shares of the Company, priced at $11.00 per ADS. In connection with this IPO, 9,714,286 ADSs were offered by the Company and 2,028,571 ADSs were offered by certain selling shareholders. The total price to the public in connection with this offering was over $128.97 million, with underwriters' discounts and commissions totaling over $9.041 million, shares sold by the selling shareholders totaling over $22.314 million, and shares sold by the Company totaling $106.857 million.

2.      Mecox, its entire Board of Directors, its Chief Financial Officer, and the Underwriters

involved in the Offering (including Credit Suisse Securities (USA) LLC ("Credit Suisse") and UBS AG ("UBS")), are each charged with including or allowing the inclusion of materially false and misleading statements in the Registration Statement and Prospectus issued in connection with the IPO, in direct violation of the Securities Act of 1933. Specifically, defendants each failed to conduct an adequate due diligence investigation into the Company prior to the IPO, and they also each failed to reveal, at the time the IPO closed – well after the end of the third quarter of 2010, the period ended September 30, 2010 – that the Company was not proceeding according to plan and that Mecox's gross margins had been adversely impacted by increased costs and expenses which would make it impossible for Mecox to achieve its projected results sponsored and/or endorsed by defendants prior to and at the time of the IPO.

3.   It was only on November 29, 2010, after the close of trading – and after the Company and certain of its insiders liquidated over $128.97 million of Mecox shares in connection with the IPO – that Mecox revealed the truth about the Company: that the problems which existed at the time of the IPO would result in disappointing results for the third quarter of 2010, including a decline in gross margins of almost 400 basis points year-over-year, a 20.4% increase in Selling, General and Administrative expenses, and a 19.8% increase in Operating expenses. These increases were driven, in part, by an 11.6% increase in marketing expenses and a 40.2% increase in compensation and benefits expenses. Moreover, while the Company reported a purported significant increase in 3Q:10 net income, all of that increase came from an interest depreciation charge-off, without which the Company would have reported a loss for the quarter of between $3.50 and $4.00 per share.

4.   The following trading day, on the publication of this news, Mecox stock price declined precipitously. As evidence of this, as shares of the Company resumed trading the following

2

day, shares of Mecox fell almost 40%, plummeting from $13.38 per share on November 29, 2010, to close at $8.15 per share the following day, November 30, 2010. On December 1, 2010, shares of the Company continued to decline as investors digested this news, trading to a low of $6.45 before closing the trading day at $6.65. The two day decline of almost 50% occurred on exceptionally heavy trading volume with over 14.759 million shares traded during the two trading days, which was more than ten times the Company's recent average daily trading volume.

     5.     The chart below evidences the artificial inflation of Mecox shares at the time of the October 2010 IPO and the dramatic decline in the price of these shares following the November 29, 2010 disclosure of the true financial and operational condition of the Company:

## JURISDICTION AND VENUE

     6.     The claims asserted herein arise under §§11 and 15 of the Securities Act of 1933 (the "Securities Act"). Jurisdiction is conferred by §22 of the Securities Act.

     7.     Venue is proper pursuant to §22 of the Securities Act, as defendant Mecox and/or the Individual Defendants and Underwriter Defendants conduct business in, and the wrongful conduct took place in, this District.

     8.     In addition to the foregoing, venue is also proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(d). Defendant Mecox is a foreign or "alien" corporation doing significant business in this District, and may properly be sued in any District of the United States, including the Southern District of New York.

## THE PARTIES

### Plaintiff

     9.     Plaintiff **AHMED ARFA** purchased shares of Mecox common stock pursuant and/or

traceable to the Company's materially false and misleading Registration Statement and Prospectus issued by defendants in connection with the October 2010 IPO, including those shares detailed in the attached Certification, incorporated herein by reference, and was damaged thereby.

**Corporate Defendant**

10.     Defendant **MECOX LANE LIMITED** is a Chinese corporation, with its chief executive offices and principal place of business located at 22nd Floor Gems Tower Building 20, Number 487 Tianlin Road, Shanghai, 200233, China. According to the Company's profile, Mecox operates China's leading online platform for apparel and accessories as measured by revenues in 2009, offering a wide selection of fashion products through its www.m18.com e-commerce website and physical store network. The Company's product offerings include apparel and accessories, home products, beauty and healthcare products, and other products, under the Company's own proprietary brands, such as Euromoda and Rampage, as well as under selected third-party brands, including established international and Chinese brands in addition to independent and emerging brands.

11.     The individuals identified as defendants in subparagraphs (a) - (g) below, are referred to collectively herein as the "Individual Defendants." The Individual Defendants are each liable for the false statements contained in the materially false and misleading Registration Statement. The Individual Defendants include the following:

(a)     Defendant **NEIL NANPENG SHEN** ("Shen") is, and at the time of the October 2010 IPO was, Chairman of the Board of Directors of Mecox. Defendant Shen signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October 2010 IPO. In connection with the IPO, defendant

4

Shen or entities associated and/or controlled by him sold at least 2.230 million shares of the Company, or 318,573 ADSs valued at over $3.504 million at the IPO Offering price.

(b)      Defendant **JOHN J. YING** ("Ying") is, and at the time of the October 2010 IPO was, Vice Chairman of the Board of Directors of Mecox. Defendant Ying signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October 2010 IPO.

(c)      Defendant **PAUL BANG ZHANG** ("Zhang") is, and at the time of the October 2010 IPO was, Chief Financial Officer and Senior Vice President of the Company. Defendant Zhang assisted in the preparation and filing of the materially false and misleading Registration Statement and Prospectus issued in connection with the October 2010 IPO.

(d)      Defendant **ALFRED BEICHUN GU** ("Gu") is, and at the time of the October 2010 IPO was, Chief Executive Officer and a member of the Board of Directors of the Company. Defendant Gu signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October 2010 IPO. In connection with the IPO, defendant Gu or entities associated and/or controlled by him sold at least 3.5 million shares of the Company, or 500,000 ADSs valued at over $5.50 million at the IPO Offering price.

(e)      Defendant **KELVIN KENLING YU** ("Yu") is, and at the time of the October 2010 IPO was, a member of the Board of Directors of Mecox. Defendant Yu signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October IPO.

(f)      Defendant **ANTHONY KAI YIU LO** ("Lo") is, and at the time of the

October 2010 IPO was, a member of the Board of Directors of Mecox. Defendant Lo signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October IPO.

      (g)     Defendant **DAVID JIAN SUN** ("Sun") is, and at the time of the October 2010 IPO was, a member of the Board of Directors of Mecox. Defendant Sun signed the materially false and misleading Registration Statement and filed with the SEC the materially false and misleading Prospectus issued in connection with the October IPO.

### IPO Underwriter Defendants

12.     In connection with the October 2010 Initial Public Offering, Credit Suisse Securities (USA) LLC and UBS AG, acted as Lead or Representative Underwriters of the Offering, facilitating the distribution of over 11.742 million shares of Mecox stock to investors and initiating the first public market for Mecox shares. Excluding the oversubscription allotment of an additional 1.761 million shares, the distribution of the Mecox shares awarded Underwriters in the IPO occurred, as follows:

| Name | Number of Shares |
| --- | --- |
| Credit Suisse Securiites (USA) LLC | 5,049,429 |
| UBS AG | 4,932,000 |
| Oppenheimer & Co. Inc. | 1,056,857 |
| Roth Capital Partners, LLC | 704,571 |
| Total | 11,742,857 |

13.     In connection with the October 2010 IPO, the Underwriter Defendants were paid at least $9.041 million – not including any additional fees paid in connection with the sale of shares

sold in connection with the Underwriters oversubscription agreement – paid indirectly by purchasers of the Company's shares. The Underwriter Defendants were paid at least $0.77 per share in connection with the 11.742 million ADSs sold in the October 2010 Offering.

14.     Shareholders were willing to, and did, pay over $9.041 million in combined fees and an additional $4.814 million in expenses to compensate the Underwriter Defendants for conducting a purported significant "due diligence" investigation into Mecox in connection with the IPO. The Underwriter Defendants' due diligence investigation was a critical component of the Initial Public Offering, and this was supposed to provide investors with important safeguards and protections.

15.     The due diligence investigation that was required from the Underwriter Defendants included a detailed investigation into Mecox gross margins, costs, expenses, sales, accounting, controls, and procedures, and it also required defendants to test the assumptions and verify the projections adopted or ratified by defendants, to the extent a reasonable investor with access to such confidential corporate information would. A reasonable due diligence investigation would have extended well beyond a mere casual view of Mecox books and records, and its accounting, financial report, and operational and financial controls. The failure of the Underwriter Defendants to conduct an adequate due diligence investigation was a substantial contributing factor leading to the harm complained of herein.

16.     In addition to the foregoing, because of the Underwriter Defendants' and Individual Defendants' positions with the Company, they each had access to the adverse undisclosed information about Mecox's business, operations, products, operational trends, financial statements, markets, and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations

compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and *via* reports and other information provided to them in connection therewith.

17.    In addition to the Underwriting Defendants, it is also appropriate to treat the individuals named as defendants herein (the "Individual Defendants") as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Accordingly, the Individual Defendants were also involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, and approved or ratified these statements, in violation of the federal securities laws.

18.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ stock market exchange (the "NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty promptly to disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially

misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions made in connection with the issuance of common stock in October 2010 violated these specific requirements and obligations.

## MATERIALLY FALSE & MISLEADING STATEMENTS
## IN THE REGISTRATION STATEMENT AND PROSPECTUS

19.     On October 26, 2010, Mecox published a release announcing that the Company had closed its initial public offering of 11.742 million ADSs at a price of $11.00 per share. This release stated, in part, the following:

> Mecox Lane Limited Announces Pricing of Initial Public Offering on the NASDAQ Global Market
>
> SHANGHAI, China, Oct. 26, 2010 (GLOBE NEWSWIRE) -- Mecox Lane Limited ("Mecox Lane" or the "Company") (Nasdaq:MCOX - News), which operates China's leading online platform for apparel and accessories as measured by revenues in 2009, today announced that its initial public offering of 11,742,857 American depositary shares ("ADSs"), each representing seven ordinary shares of the Company, was priced at $11.00 per ADS. Of the 11,742,857 ADSs being offered, 9,714,286 ADSs are offered by Mecox Lane, and 2,028,571 ADSs are offered by the selling shareholders. The Company will not receive any proceeds from the ADSs sold by the selling shareholders. The underwriters have been granted a 30-day option to purchase up to an additional 1,761,429 ADSs from Mecox Lane and certain selling shareholders. The ADSs will begin trading on the NASDAQ Global Market on October 26, 2010 under the symbol "MCOX."
>
> Credit Suisse Securities (USA) LLC and UBS AG acted as joint bookrunners for the offering. Oppenheimer & Co. Inc. and Roth Capital Partners, LLC acted as co-managers for the offering.

20.     In connection with the Company's IPO, on or about October 26, 2010, a registration statement was declared effective by the Securities and Exchange Commission, and a final prospectus for the Offering has been filed with SEC pursuant to Form 424(b)4. In the Overview section of the

IPO Prospectus defendants conditioned investors to believe that the Company was experiencing continued strong demand for its products and that the Company was operating in accordance with the guidance sponsored and/or endorsed by defendants during its investor presentations and "road show" presentations hosted at or before the time of the IPO. In addition, the IPO Prospectus gave no indication that at that time Mecox was already experiencing a significant decrease in product gross margins and an increase in administrative and operating expenses.

21.     Instead of disclosing the adverse conditions that defendants disregarded at that time, the IPO Prospectus provided the following breakdown of net revenues, cost of goods sold and gross profits attributed to the Company's different segments, in part, as follows:

| | Online platform $ | Directly operated Stores $ | Franchised Stores $ | Total $ |
|---|---|---|---|---|
| **Six-month period ended June 30, 2009** | | | | |
| Net revenues | 58,237,545 | 15,644,376 | 2,426,160 | 76,308,081 |
| Cost of goods sold | 33,105,160 | 6,693,313 | 1,441,588 | 41,240,061 |
| Gross profit | 25,132,385 | 8,951,063 | 984,572 | 35,068,020 |
| Selling, general and administrative expenses | | | | 28,549,879 |
| Depreciation and amortization | | | | 1,570,432 |
| Other income, net | | | | (40,314 |
| Income from operations | | | | 4,988,024 |
| Interest income | | | | 148,062 |
| Income before income taxes | | | | 5,136,086 |
| **Six-month period ended June 30, 2010** | | | | |
| Net revenues | 84,781,633 | 15,991,464 | 7,260,572 | 108,033,669 |
| Cost of goods sold | 48,649,793 | 7,161,345 | 4,537,894 | 60,349,032 |
| Gross profit | 36,131,840 | 8,830,119 | 2,722,678 | 47,684,637 |
| Selling, general and administrative expenses | | | | 42,580,146 |

| | |
|---|---|
| Depreciation and amortization | 2,312,774 |
| Other income, net | (159,336 |
| Income from operations | 2,951,053 |
| Interest income | 138,442 |
| Income before income taxes | 3,089,495 |

22.    In fact, the IPO Prospectus created the false impression that Gross Margins were actually improving at the time of the IPO rather then disclosing that they were declining. As evidence of this, when reporting the Company's Segment Gross Profits for the first half of 2010, the IPO Prospectus stated, in part, the following:

> *Segment Gross Profit.* Our total segment gross profit increased by 36.0% from $35.1 million for the six months ended June 30, 2009 to $47.7 million for the six months ended June 30, 2010, due to increases in gross profits attributable to our online platform, directly operated stores and franchised stores. Our segment gross margin was 44.1% for the six months ended June 30, 2010, compared to 46.0% for the six months ended June 30, 2009.

23.    In addition to the foregoing, the IPO Prospectus also conditioned investors to believe that the Company maintained an adequate system of internal controls, sufficient to monitor and accurately report Mecox's inventory and gross margins, in part, as follows:

Management Information System

> We have developed a proprietary management information system tailored for our operations. We continue to develop our management information system to integrate two dimensions of our business:
>
> • *Front-end integration.* All our sales operations are supported by our centralized management information system and share the same customer database, which enables us to generate synergy between our online platform and stores.
>
> • *Back-end integrated.* Our management information system also supports

11

other parts of the business flow including procurement, inventory management, order processing, and distribution. The integration enables a better control of inventory and gross margin, as well as improves efficiency.

24.    Rather than report that the Company had already experienced a 20.4% increase in Selling, General, and Administrative Expenses as well a 19.8% increase in Operating Expenses, the IPO Prospectus stated, in part, the following:

*Operating Expenses*

Our operating expenses were $23.5 million, $44.7 million and $71.8 million in 2007, 2008 and 2009, respectively. Our operating expenses were $30.1 million and $44.7 million for the six months ended June 30, 2009 and 2010, respectively.

*Selling, General and Administrative Expenses.* Our selling, general and administrative expenses primarily consist of compensation and benefits for our directly operated store and corporate office employees, marketing and advertising expenses, rental of directly operated stores, call centers, logistics center and corporate facilities, costs for sample product development, freight expenses associated with moving merchandise from our logistics center to stores, and legal, finance, information systems and other corporate overhead expenses. Our selling, general and administrative expenses also include share-based compensation expenses, as described below. In 2007, 2008 and 2009, our selling, general and administrative expenses were $23.1 million, $43.3 million and $68.5 million, representing 37.7%, 40.3% and 38.6% of our net revenues for the same periods, respectively. For the six months ended June 30, 2009 and 2010, our selling, general and administrative expenses were $28.6 million and $42.6 million, representing 37.4% and 39.4% of our net revenues for the same periods, respectively.

25.    While the IPO Prospectus did state that defendants expected that expenses could increase in the near term as the Company expanded its operations, the reported financial statements at the time of the October Offering indicated that SG&A expenses as well as total operating expenses had actually fallen in each of the prior three quarters leading up to the IPO. At no time did defendants reveal that, at the time of the October IPO, this trend had reversed itself during the quarter ended September 30, 2010, or that SG&A expenses had already risen more than 20% above the prior

quarter. Rather than reveal these facts, the IPO Prospectus provided the following materially
misleading financial information that stated, in part, the following:

| | For the Three Months Ended | | | | | | | | |
| | Mar. 31, 2008 | June 30, 2008 | Sept. 30, 2008 | Dec. 31, 2008 | Mar. 31, 2009 | June 30, 2009 | Sept. 30, 2009 | Dec. 31, 2009 | Mar. 31, 2010 | June 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | (in thousands of $) | | | | | | | | | |
| **Consolidated Statement of Operations Data:** | | | | | | | | | | |
| Net revenues | 19,305 | 27,324 | 26,711 | 34,187 | 33,383 | 42,925 | 40,684 | 60,697 | 49,260 | 58,774 |
| Cost of goods sold (excluding depreciation and amortization) | (10,609) | (14,695) | (14,443) | (18,731) | (19,000) | (22,240) | (22,915) | (32,902) | (28,430) | (31,919) |
| Operating expenses: | | | | | | | | | | |
| Selling, General and administrative expenses | (7,687) | (9,945) | (11,355) | (14,313) | (12,937) | (15,613) | (16,710) | (23,244) | (21,669) | 20,911) |
| Depreciation and amortization | (188) | (221) | (407) | (638) | (700) | (870) | (1,019) | (1,009) | (1,250) | (1,062) |
| Other income (expense) | 17 | 2 | 62 | (58) | (78) | 118 | 141 | 73 | 113 | 46 |
| Total operating expenses | (7,858) | (10,164) | (11,700) | (15,009) | (13,715) | (16,365) | (17,588) | (24,180) | (22,806) | (21,927) |

26.    While the Company did report that it experienced "fluctuation[s]" in its quarterly
SG&A expenses, the IPO Prospectus conditioned investors to believe that these expenses in 4Q:09
and 1Q:10 were "relatively high," leading investors to believe that the high costs during this time
were not consistent with expected future results, which reasonably could be expected to normalize in
the near-term. As evidence of this, the IPO Prospectus stated, in part, the following:

> We experienced fluctuation in our quarterly selling, general and administrative
> expenses generally corresponding to fluctuation in our quarterly net revenues. Our
> selling, general and administrative expenses for the fourth quarter of 2009 and the
> first quarter of 2010 were relatively high primarily due to our hiring of more
> employees to enable the growth of our business and our enhanced marketing efforts,
> particularly online advertising and distribution of e-mails and SMS.

### The True Financial and Operational Condition of
### Mecox is Belatedly Disclosed

27.    On November 29, 2010, after the close of trading – and after the Company and certain
of its insiders liquidated over $128.97 million of Mecox ADSs in connection with the IPO – Mecox

shocked and alarmed investors when the Company reported disappointing results for the third quarter ended September 30, 2010, the period prior to which the October 26, 2010, IPO was conducted. At that time, Mecox revealed the truth about the Company, including that the problems which existed at the time of the IPO would result in disappointing results for the third quarter of 2010, including a decline in gross margins of almost 400 basis points year-over-year, a 20.4% increase in Selling, General, and Administrative expenses, and a 19.8% increase in Operating expenses. These increases were driven, in part, by an 11.6% increase in marketing expenses and a 40.2% increase in compensation and benefits expenses. Moreover, while the Company reported a purported significant increase in 3Q:10 net income, all of which increase came from an interest depreciation charge-off, without which the Company would have reported a loss for the quarter of between $3.50 and $4.00 per share.

28.     The following trading day, on the publication of this news, Mecox stock price declined precipitously. As evidence of this, as shares of the Company resumed trading the following day, shares of Mecox fell over 40% – plummeting from $13.38 per share on November 29, 2010, to close at $8.15 per share the following day, November 30, 2010. On December 1, 2010, shares of the Company continued to decline as investors digested this news, trading to a low of $6.45 before closing the trading day at $6.65. The two-day decline of almost 50% occurred on exceptionally heavy trading volume with over 14.759 million shares traded during the two trading days, which was more than ten times the Company's recent average daily trading volume.

29.     The chart below evidences the artificial inflation of Mecox shares at the time of the October 2010 IPO and the dramatic decline in the price of these shares following the November 29, 2010 disclosure of the true financial and operational condition of the Company:



30.     As investors realized after the publication of these shocking and belated adverse admissions, the true but undisclosed negative conditions that existed at the time of the October 2010 IPO, and that continued to adversely impact the Company after that time include, in part, the following:

(a)     At the time of the October 2010 IPO, it was already foreseeable that Mecox would not be able to achieve results for the third quarter of 2010 that were in line with either historical growth trends or defendants' guidance;

(b)     At the time of the IPO, the Company had *already* experienced disappointing results for the third quarter of 2010 – the period ended September 30, 2010, prior to the Offering – including a significant decline in Gross Margins and a material increase in Selling, General, and Administrative expenses, Operating expenses, Marketing expenses, and Compensation and Benefit expenses that would foreseeably continue to adversely impact the Company for the foreseeable near-term;

15

(d)     At the time of the IPO, Mecox did not maintain an adequate system of internal controls and procedures such that it would properly report and disclose these material increases in expenses and declines in gross margins, and such that the Company did not even maintain the most minimum standards of good Corporate Governance or controls and procedures, as is required by the SEC and the Company's own internal guidelines and standards of business conduct; and

(e)     At the time of the October 2010 Offering, defendants had *not* conducted an adequate due diligence investigation into Mecox, which would have revealed many of the issues, and which would most likely have prevented the sale of this Company to shareholders through the public equity markets at that time, or at the inflated price at which these shares were originally sold.

31.     Mecox share price declined almost 50% in the two trading days following the November 29, 2010, earnings release, which was an immediate reaction to the publication of these belated disclosures. As over 14.7 million shares traded over those two days, Mecox stock collapsed – plummeting to approximately $6.50 per share on December 1, 2010, from a close of approximately $13.50 per share the day prior to the report of 3Q:10 results.

## CAUSATION AND ECONOMIC LOSS

32.     In connection with the October 2010 Mecox IPO, defendants signed a materially false and misleading Registration Statement and filed with the SEC and made available to shareholders a materially false and misleading Prospectus. These filings were essential in allowing defendants to complete the Initial Public Offering of at least 11.742 million ADSs which raised over $129.162 million, and to create a public market for trading in Company stock immediately thereafter.

33.     On November 29, 2010, after defendants' prior misrepresentations and illegal and improper conduct came to be revealed and was apparent to investors, shares of Mecox declined

precipitously, evidence that the prior artificial inflation in the price of Company shares was eradicated. As a result of their purchases of Mecox stock in connection with the IPO, including those who purchased shares traceable to the Offering in the public markets immediately thereafter, plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

34.     By improperly characterizing the Company's financial prospects, the defendants presented a misleading image of Mecox's business and future growth prospects. Within the IPO Prospectus and Registration Statement, defendants repeatedly emphasized the ability of the Company to integrate its acquired assets and consistently reported expenses and gross profit margins within expectations sponsored and/or endorsed by defendants. These claims caused and maintained the artificial inflation in Mecox's stock at the time of the October 2010 IPO, and thereafter until the truth about the Company was ultimately revealed to investors.

35.     Defendants' false and materially misleading statements caused Mecox shares to trade at artificially inflated levels from the time of the IPO, when they were offered at $11.00 per share.

36.     On November 29, 2010, however, after investors learned the truth about the Company, and learned that defendants could not operate the Company according to plan, that expenses had risen well above expectations, that gross margins had fallen well below plan and below historical trends, and that defendants could not operate the Company in accordance with the expectations sponsored and/or endorsed by the Individual Defendants, shares of the Company collapsed. Defendants' belated disclosures had an immediate, adverse impact on the price of Mecox shares.

37.     These belated revelations also evidenced defendants' prior misrepresentation of

Mecox's business prospects due to defendants' false statements. As investors and the market ultimately learned, the Company's prior business prospects had been overstated. As this adverse information became known to investors, the prior artificial inflation was immediately eliminated from Mecox's share price, and shareholders were damaged as a result of this related share price decline.

38.     As a direct result of investors learning the truth about the Company, on November 29, 2010, as shares of the Company resumed trading, shares of Mecox fell over 40%, plummeting from $13.38 per share to close at $8.15 per share on November 30, 2010. On December 1, 2010, shares of the Company continued to decline as investors digested this news, trading to a low of $6.45 before closing the trading day at $6.65. The two-day decline of almost 50% occurred on exceptionally heavy trading volume with over 14.759 million shares traded during the two trading days, which was more than ten times the Company's recent average daily trading volume. This dramatic share price decline eradicated much of the artificial inflation from Mecox's share price, causing real economic loss to investors who purchased this stock in, or in connection with, the Mecox IPO.

39.     The economic loss, *i.e.* damages, suffered by plaintiff and other members of the Class was a direct result of defendants' misrepresentations and omissions being revealed to investors, and the subsequent significant decline in the value of the Company's shares was also the direct result of defendants' prior misstatements and omissions being revealed.

## CLASS ACTION ALLEGATIONS

40.     This is a class action on behalf of all persons who purchased Mecox shares or traceable stock pursuant to the October 2010 Registration Statement and Prospectus (the "Class"), excluding defendants. Class members are so numerous that joinder of them all is impracticable.

41.     Common questions of law and fact predominate and include: (i) whether defendants:

violated the Securities Act; (ii) whether the Mecox IPO Registration Statement and Prospectus

misrepresented material facts; and (iii) the extent of and appropriate measure of damages.

42.     Plaintiff's claims are typical of those of the Class. Prosecution of individual actions

would create a risk of inconsistent adjudications. Plaintiff will adequately protect the interests of the

Class. A class action is superior to other available methods for the fair and efficient adjudication of

this controversy.

## CLAIM FOR RELIEF

### For Violations of §11 of the Securities Act Against
### All Defendants and §15 of the Securities Act
### Against Defendants Shen, Ying, Zhang and Gu

43.     Plaintiff incorporates each and every allegation above as if stated herein.

44.     The Individual Defendants each signed Mecox's IPO Registration Statement and/or

filed that Prospectus with the SEC and distributed it to investors. The Underwriter Defendants each

permitted their names to be included on the cover of the Prospectus as the Underwriters.

45.     On or about October 26, 2010, the defendants named in this Claim for Relief

completed an IPO of 11.742 million shares of Mecox's ADS at $11.00 per share, for total proceeds

of at least $129.162 million.

46.     Each of the statements alleged herein relating to Mecox's prospects and financial

results made in the October 2010 Prospectus and Registration Statement were false or misleading

when issued. The true but concealed facts were that defendants could not operate the Company

according to plan, that expenses had risen well above expectations, that gross margins had fallen well

below plan and below historical trends, and that defendants could not operate the Company in

accordance with the expectations sponsored and/or endorsed by the Individual Defendants. These omissions were a violation of SEC Regulation S-K, Item 303(a), which requires that trends which will have a material effect on a registrant's results be disclosed.

47.     All defendants named in this Claim for Relief, with the exception of Mecox, the issuer (whose liability for the misstatements is absolute), owed to the purchasers of the stock, including Plaintiff and the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time it became effective, to ensure that those statements were true and that there was no omission to state material facts required to be stated in order to make the statements contained therein not misleading.

48.     The officers and directors of Mecox who were signatories to the Registration Statement and the Underwriter Defendants were responsible for the preparation of the Prospectus and the Registration Statement. By virtue of the material misrepresentations contained in the Registration Statement and Prospectus, plaintiff and the Class have been damaged.

49.     By reason of the conduct herein alleged, each defendant named in this Claim for Relief violated §11 of the Securities Act. Defendants Shen, Ying, Zhang and Gu, by reason of their stock ownership and positions with Mecox, were controlling persons of Mecox and are liable under §15 of the Securities Act.

### PRAYER

WHEREFORE, plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; and such other relief as the Court may deem proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 3, 2010

KIM MILLER
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Ste. 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com


LEWIS KAHN
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

**Attorneys for Plaintiff**

## CERTIFICATION PURSUANT TO SECURITIES LAWS

_Arfa Ahmed_ (name) ("Plaintiff") declares, as to the claims asserted under the federal securities law, that:

1. Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase securities of Mecox Lane Limited at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Plaintiff has executed transactions in the securities of Mecox Lane Limited as follows. See attached Schedule.

5. In the last three years, Plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Plaintiff will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: __12/2__ , 2010

_____
Plaintiff Signature

__ARFA   AHMED__
Printed Name

Name of Plaintiff: _ARFA AHMED_____

Schedule of Plaintiff's Transaction(s) in: Mecox Lane Limited

Purchase(s):

| Date | Units | Price |
|------|-------|-------|
| 10/26/10 | 2,000 | 17.3 |