## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED ARFA, Individually And On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MECOX LANE LIMITED, NEIL NANPENG SHEN, JOHN J. YING, PAUL BANG ZHANG, ALFRED BEICHUN GU, KELVIN KENLING YU, ANTHONY KAI YIU LO, DAVID JIAN SUN, UBS AG, and CREDIT SUISSE SECURITIES (USA) LLC, )<br><br>Defendants. ) | Civil Action No. 10-cv-9053 (RWS)<br><br>Judge: Hon. Robert W. Sweet |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Kim E. Miller
**KAHN SWICK & FOTI, LLC**
500 5th Avenue, Suite 1810
New York, NY 10110
Tel: (212) 696-3730
Fax: (504) 455-1498
Email: Kim.Miller@ksfcounsel.com

Jeremy A. Lieberman
**POMERANTZ HAUDEK GROSSMAN & GROSS LLP**
100 Park Avenue
New York, NY 10017
Tel: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com

*Co-Lead Counsel for Lead Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT…………………………………………..1

II.  ARGUMENT…………………………………………………………4

    A.  Applicable Legal Standards……………………………………..4

    B.  Rule 9(b) Does Not Apply………………………………………4

    C.  The Complaint Alleges Materially Untrue and Misleading Statements and Omissions………………………………………………....8

        1.  Materially Untrue and Misleading Statements and Omissions Regarding Growth of Physical Stores………………………..9

        2.  Materially Untrue and Misleading Statements and Omissions Regarding Key Personnel……………………………………14

        3.  Materially Untrue and Misleading Statements and Omissions Regarding Mecox' Revenue Growth………………………..16

            a.  Material Omissions of Financial Data from the Third and Fourth Quarters of 2010…………………………16

            b.  Materially Untrue and Misleading Statements and Omissions Regarding Dependence on Online Platform……………………………………………22

            c.  Materially Untrue and Misleading Statements and Omissions Regarding Expenses………………………22

        4.  Materially Untrue and Misleading Statements and Omissions Regarding the Company's Marketing………………………23

        5.  Materially Untrue and Misleading Statements and Omissions Regarding the Company's Internal Controls and Due Diligence……………………………………………………25

    D.  Loss Causation Does Not Form a Basis for Dismissal……………..26

III. CONCLUSION………………………………………………………29

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................... 4

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)............................................................... 8, 18

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, (2007) ................................................... 4

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002) ...................................... 4

*City of Brockton Ret. Sys. v. Shaw Group. Inc.,* 540 F.Supp.2d 464 (S.D.N.Y. 2008) ................. 7

*DeMaria v. Andersen*, 318 F.3d 170 (2d Cir. 2003) ............................................... 17, 18

*Faconti v. Potter,* 242 Fed. Appx. 775 (2d Cir. 2007).................................................... 4

*Ganino v. Citizens Utils. Co.,* 228 F.3d 154 (2d Cir. 2000) ........................................... 16

*Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597, 611 (S.D.N.Y. 2008) ....................................... 18

*Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1297 (2d Cir. 1973) ........................................ 12

*Gray v. Noholoa,* 214 U.S. 108 (1909) ......................................................................... 25

*Herman & MacLean v. Huddleston,* 459 U.S. 375 (1983) ........................................... 1, 5

*Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007) .................................... 7

*In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F.Supp.2d 404 (S.D.N.Y. 2009) ................. 27

*United States v. Space Hunters, Inc.,* 429 F.3d 416 (2d Cir. 2005)............................................. 27

*In re CitiGroup Bond Litig.,* 723 F.Supp.2d 568 (S.D.N.Y. 2010) ................................................ 6

*In re Comverse Tech., Inc. Sec. Litig.,* 543 F.Supp.2d 134 (E.D.N.Y. 2008)............................... 16

*In re Evci Colleges Holding Corp., Sec. Litig.*, 469 F. Supp. 2d 88 (S.D.N.Y. 2006) ................ 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 411 F.Supp.2d 377 (S.D.N.Y.2006).......... 3, 26, 27

*In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d 419, 434 (S.D.N.Y. 2009)............................... passim

*In re Giant Interactive Group, Inc. Sec. Litig.,* 643 F. Supp. 2d 562 (S.D.N.Y. 2009).. 3, 4, 26, 27

*In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495 (S.D.N.Y. 2010) .................. 24

*In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189 (S.D.N.Y. 2004) ............................... 1

*In re Marsh & Mclennan Cos, Inc. Sec. Litig.*, 501 F.Supp.2d 452 (S.D.N.Y. 2006) ................. 25

*In re Motorola Sec. Litig.*, 505 F.Supp.2d 501 (N.D. Ill. 2007) .................................................... 28

*In re Noah Educational Holdings, Ltd. Sec. Litig.*, 08-9203, 2010 WL 1372709 ...................... 19
    (S.D.N.Y. Mar. 31, 2010)

*In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................. 7

*In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611 (S.D.N.Y. 2007) .................................................. 6

*In re Shoretel Inc.*, No. 08-00271, 2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ........................... 28

*In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*, 202 F.Supp.2d 8 (S.D.N.Y 2011) ............ 20, 21

*In re Twinlabs Corp. Sec. Litig.,* 103 F.Supp.2d 193 (E.D.N.Y. 2000) ......................................... 5

*In re Virgin Mobile USA IPO Litig.*, 2:07-cv-5619-SDW (D.N.J. March 9, 2009) ..................... 19

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 ............................................... 3, 13
    (S.D.N.Y. 2011)

*In re Wachovia Equity Sec. Litig.*, 753 F.Supp.2d 326 (S.D.N.Y. 2011) ................................... 5, 6

*In re WorldCom, Inc. Sec. Litig.*, No. 02-civ-3288, 2004 WL 1435356
    (S.D.N.Y. June 28, 2004) ................................................................................................. 2, 5, 7

*Iowa Public Emp. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137 (2d Cir. 2010) .......... 13, 27, 28, 29

*Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-0976, 2008 WL 4449280 .......................... 6, 7
    (S.D.N.Y. Sept. 30, 2008)

*Levine v. AtriCure, Inc.,* 508 F.Supp.2d 268, 272 (S.D.N.Y. 2007) ............................................. 26

*Litwin v. Blackstone Group, L.P.*, 634 F.3d 706 (2d Cir. 2011) ........................................... passim

*Lowinger v. Pzena Inv. Mgmt., Inc.*, 341 Fed.Appx. 717 (2d Cir. 2009) ..................................... 11

*Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702 (7th Cir. 2008) ................................. 7

*Matrixx v. Sircausano*, 131 S.Ct. 1309 (2011) ................................................................... passim

*McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576 (2d Cir. 1990) .................................... 11

*Miller v. Apropos Tech., Inc.*, 2003 WL 1733558 (Mar. 31, 2003 N.D. Ill.) .............................. 15

*Mitsubishi Chem. Corp. v. Barr Laboratories, Inc.*,2010-1432,  ................................. 25
  2011 WL 3288394, (Fed. Cir. Aug. 2, 2011)

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................... 2, 5, 14

*Rusyniak v. Gensini*, 629 F.Supp. 2d 203 (N.D.N.Y. 2009) ........................................ 25

*Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996) .................................... 20

*Steinberg v. PRt Group, Inc.*, 88 F.Supp.2d 294 (S.D.N.Y. 2000) ................................ 11

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................................ 5

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) .......................................... 18

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ..................................... 12

## STATUTES & RULES

15 U.S.C. § 77k(a) ......................................................................... 2

15 U.S.C. § 77z ............................................................................ 12

17 C.F.R. § 229.303 ................................................................. passim

17 C.F.R. § 230.408 ................................................................. passim

17 C.F.R. §§ 210.3 ................................................................. 17, 18

Rule 12(b)(6) ...................................................................... 4, 27, 28

Rule 8 ................................................................................. 5, 7

Rule 9(b) ........................................................................... passim

Rule 15 ............................................................................... 29

Lead Plaintiff Westend ("Plaintiff") respectfully submits this opposition to Defendants' motion to dismiss the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Complaint").

## I.    PRELIMINARY STATEMENT

The Complaint alleges that Defendants[1] violated Sections 11 and 15 of the Securities Act of 1933 ("1933 Act") because Mecox's Registration Statement issued in connection with its October 26, 2010, IPO contained materially untrue and misleading statements and omissions regarding, *inter alia*, Mecox's revenue growth, network of physical stores, key personnel, online platform, marketing, internal controls and due diligence. ¶¶ 1, 2, 29, 33-44, 50, 61, 63, 64, 66-68, 69-77. Section 11 "'was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering.'" *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004), quoting *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82 (1983). Where a Registration Statement is materially untrue or misleading, liability for the Company is "virtually absolute, even for innocent misstatements." *Huddleston*, 459 U.S. at 382 n.14. Further, "claims brought pursuant to section[] 11 … must plead materiality of the alleged misrepresentation or omission, but not scienter, reliance, or causation." *In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d 419, 434 (S.D.N.Y. 2009). Plaintiff has adequately pleaded his claims against each Defendant. Therefore, none of the Defendants – including the Company, the Individual Defendants, and the Underwriter Defendants -- has any valid basis for dismissal.

---

[1] Defendants are Mecox Lane Limited ("Mecox" or the "Company"); Neil Nanpeng Shen, John J. Ying, Alfred Beichun Gu, Kelvin Kenling Yu, Anthony Kai Yiu Lo, and David Jian Sun ("Individual Defendants"); and Credit Suisse Securities (USA) LLC and UBS AG ("Underwriter Defendants").

The Complaint adequately alleges, *inter alia*, that Defendants breached their duty to disclose Mecox's results for 3Q:10, which ended three weeks prior to the IPO and which results were in hand at the time of the IPO but omitted from the Registration Statement, rendering it materially untrue and misleading with regard to the then-current financial condition of the Company. ¶¶2, 3, 78. Instead of addressing the Complaint's strong allegations head on, Defendants resort to premature, fact-based quibbling.  For example, Defendants argue that information about physical stores was adequately disclosed, where such information could only be discovered (if at all) by complex supplemental analysis of statistical information contained in multiple charts in the Registration Statement. Def. Br. at 11.  Unfortunately for Defendants, typical investors need not be statisticians and cannot be charged with conducting independent manipulations of raw data to survive a motion to dismiss.

Oddly, Defendants imply that the statutory language of Section 11 itself sounds in fraud—thus requiring the imposition of the Rule 9(b) heightened pleading standard. Def. Br. at 9.  Section 11 is a strict liability and negligence statute requiring only notice pleading under Rule 8.  *See In re WorldCom, Inc. Sec. Litig.*, No. 02-civ-3288, 2004 WL 1435356 at *3 (S.D.N.Y June 28, 2004).  The Complaint does not sound in fraud and Rule 9(b) does not apply.  *See* 15 U.S.C. § 77k(a); *Rombach v. Chang*, 355 F.3d 164, 171 (2nd Cir. 2004).[2]

Because the safe harbor for forward-looking statements in inapplicable to IPOs, Defendants seek to rely on the pre-PSLRA "bespeaks caution" doctrine, providing a single statement to which they claim the doctrine applies.  Even if Defendants' statement of present and historic fact were somehow deemed forward looking, the Company's so-called risk disclosures were too generic to be meaningful and warned of "risks" that already existed at the time of the

---

[2] Even if this Court were to determine that Plaintiff's allegations somehow trigger Rule 9(b), Plaintiff has met these requirements in alleging the who, what, when, where, and how of each individual misstatement or omission.

IPO. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 568 (S.D.N.Y. 2011). The doctrine offers no solace to Defendants.

One of the most striking aspects of Defendants' motion is what Defendants choose *not* to address. They do not so much as mention *Matrixx v. Sircausano*, 131 S.Ct. 1309 (2011), the Supreme Court's recent, controlling pronouncement on the materiality inquiry, or *Litwin v. Blackstone Grp., L.P.,* 634 F.3d 706 (2d Cir. 2011), the Second Circuit's controlling opinion regarding the minimal burden, under Section 11, of stating a claim that defendants failed to make required disclosures. In *Matrixx,* the Supreme Court rejected defendants' materiality argument that adverse incidents need not be disclosed because they were "anecdotal" and not "statistically significant." 131 S.Ct. at 1319. In *Blackstone*, the Second Circuit held that "[s]o long as plaintiffs plausibly allege that [defendant] omitted material information that it was required to disclose or made material misstatements in its offering documents, they meet the relatively minimal burden of stating a claim pursuant to Sections 11… Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower." 634 F.3d at 716, 718.

Presumably because *Matrixx* and *Blackstone* effectively dispose of Defendants' disclosure and materiality arguments, Defendants throw in a premature negative causation defense. Of course, causation is not an element of Section 11 and need not be pleaded. *In re Giant Interactive Group, Inc. Sec. Litig.,* 643 F. Supp. 2d 562, 571 (S.D.N.Y. 2009). Nor can Defendants meet the "heavy burden" of demonstrating negative causation is apparent on the face of the Complaint. *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 36 (2d Cir. 2009). It is not. For these reasons, and the additional reasons discussed herein, Defendants' motion to dismiss should be denied.

## II.     ARGUMENT

### A.     Applicable Legal Standards

In ruling on a motion to dismiss made pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, (2007). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court must construe the Complaint liberally and draw all reasonable inferences in Plaintiff's favor. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002). The question before the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Giant Interactive Group, Inc. Sec. Litig.,* 643 F. Supp. at 568. "Consequently, the complaint should not be dismissed on a motion for judgment on the pleadings unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Id.,* 643 F. Supp. 2d at 568 (emphasis added) (citing *Faconti v. Potter,* 242 Fed. Appx. 775, 777 (2d Cir. 2007)).

Further, "[s]o long as plaintiffs plausibly allege that [defendant] omitted material information that it was required to disclose or made material misstatements in its offering documents, they meet the relatively minimal burden of stating a claim pursuant to Section[] 11 … Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower." *Blackstone*, 634 F.3d at 716, 718.

### B.     Rule 9(b) Does Not Apply

Section 11 imposes liability where a registration statement: "(1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statement therein not misleading." *Giant*

*Interactive,* 643 F. Supp. 2d at 568. If the registration statement is false or misleading, liability is "virtually absolute, even for innocent misstatements." *Huddleston*, 459 U.S. at 382 n.14. "Specifically, claims brought pursuant to section[] 11 … must plead materiality of the alleged misrepresentation or omission, but not scienter, reliance, or causation." *In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d at 434, citing *Rombach,* 355 F.3d at 169 n. 4. Moreover, "[s]ection 11 'places a relatively minimal burden on a plaintiff,' requiring simply that the plaintiff allege that he purchased the security and that the registration statement contains false or misleading statements concerning a material fact." *In re Twinlabs Corp. Sec. Litig.,* 103 F.Supp.2d 193, 201 (E.D.N.Y. 2000), quoting *Huddleston,* 459 U.S. at 382. This Court has stated, "Pleading a Section 11 claim is not difficult." *Giant Interactive*, 643 F.Supp.2d at 568.

Plaintiff's Securities Act claims are governed by Rule 8 notice pleading. *See In re WorldCom, Inc. Sec. Litig*., 2004 WL 1435356 at *3. Under Rule 8(a), a complaint adequately states a claim when it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)). "As a general matter, a plaintiff bringing Securities Act claims need not comply with the heightened pleading standard imposed by Rule 9(b) because '[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2).'" *In re Wachovia Equity Sec. Litig.*, 753 F.Supp.2d 326, 374 (S.D.N.Y. 2011), quoting *Rombach*, 355 F.3d at 171. The Second Circuit applies the heightened pleading standard of Rule 9(b) to Section 11 claims *only* where claims are rooted in allegations of fraudulent behavior. *Rombach*, 355 F.3d at 171. Here, the Complaint does not allege any fraudulent behavior—only negligence and strict liability. *See e.g.*, ¶¶38, 41, 50, 61, 68, 71, 75, 79, 82, 85.

Bizzarely, Defendants claim that the Complaint sounds in fraud because it alleges that Defendants made "*materially untrue and misleading statements and omissions*" and these phrases are "classically associated with fraud." Def. Br. at 17 (emphasis added).  In short, Defendants argue that the statutory language of Section 11 itself – a negligence and strict liability provision -- sounds in fraud. This is wrong. "Fraud, of course, implies more than falsity, and the mere fact that a statement is misleading (as are all false statements, whether intentionally, negligently or innocently made) does not make it fraudulent." *In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 632 (S.D.N.Y. 2007).  The Second Circuit "did not intend *Rombach* as an instruction that all § 11 pleadings should be subjected to the Rule 9(b) standard." *Wachovia*, 753 F.Supp.2d at 375. "[M]ere use of the [section 11] statutory language is itself insufficient to render a complaint one that sounds in fraud." *Id.*, quoting *In re CitiGroup Bond Litig.,* 723 F.Supp.2d 568, 586 (S.D.N.Y. 2010). Therefore, the Rule 9(b) standard does not apply because the Complaint includes statutory language from Section 11.

Next, Defendants point to three examples manufactured by them and not contained in the four corners of the Complaint and complain that these examples sound in fraud. Def. Br. at 17-18. Tellingly, Defendants quote no actual language from the Complaint alleging Defendants' actual knowledge or deliberate withholding of any material information. Def. Br. at 17-18.  Their attempt to misapply a heightened pleading standard fails.  The fact that the Complaint states that the "Prospectus failed to include material information" or that information was "undisclosed to investors" is not tantamount to an accusation of fraud as Defendants suggest. Def. Br. at 17-18. Defendants rely on *Ladmen Partners, Inc. v. Globalstar, Inc*., No. 07-0976, 2008 WL 4449280 at *11 (S.D.N.Y. Sept. 30, 2008), when claiming that "Section 11 claims sound[] in fraud where plaintiff alleged that defendant withheld materially negative information prior to IPO." Def. Br

at 18. Defendants are mistaken. In truth, in *Globalstar* the court found that the heightened pleading standard applied to Section 11 claims because the complaint was "riddled with allegations of essentially fraudulent conduct," and that "Plaintiff basically asserts that not only did Globalstar have actual knowledge… but it deliberately withheld that information from investors because it needed money from the IPO…" *Id.* (emphasis added). Here, there are simply no such fraudulent allegations in the Complaint. Accordingly, Rule 9(b) is not triggered.

Defendants also attempt to dismiss Plaintiff's well-placed confidential witness ("CW1"), a Mecox franchisee, by resorting to baseless name calling, seeking to dismiss the witness as nothing more than a "disgruntled franchisee" and hypothesizing that the witness must have an "axe to grind."[3] Def. Br. at 16. Notwithstanding the fact that Defendants do not offer a scintilla of evidence to support these accusations, confidential witnesses are not needed to state a claim under Section 11. Plaintiff must simply present a short and plain statement of the claim showing that the pleader is entitled to relief. *WorldCom,* 2004 WL 1435356 at *3. As confidential witnesses can be used to meet the requirements of Rule 9(b) and the PSLRA, there can be little doubt that here, under Rule 8(a), a confidential witness in a position to know the details provided exceeds the Rule 8(a) requirements. ¶¶ 56-59.

In the alternative, if the Court were to determine that Rule 9(b) is triggered, the Complaint still provides the requisite factual detail to satisfy the heightened pleading standard.

---

[3] Defendants cite *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007), for the proposition that allegations by anonymous former employees should be discounted. *Higginbotham* is not controlling here, and its reasoning has been roundly rejected by numerous courts, including those in its own Circuit. *See, e.g., Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711-12 (7th Cir. 2008) (distinguishing *Higginbotham* and noting that the sources in *Higginbotham* were not only anonymous, but "described merely as three ex-employees of the [defendant company] and two consultants."). Further, courts in the Second Circuit have expressly declined to adopt *Higginbotham*. *See In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 526, n.18 (S.D.N.Y. 2009) ("The Court declines to follow this [*Higginbotham*] approach absent guidance from the Second Circuit, and will continue to consider allegations based on information provided by confidential sources without discounting those allegations due *solely* to the anonymity of the information's source."); *see also City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F.Supp.2d 464, 474 (S.D.N.Y.2008) (declining to adopt the *Higginbotham* standard).

To provide one example, the Complaint alleges that Defendants touted the expansion of its physical store network to promote higher margin sales throughout the Registration Statement, but in truth, at the time of the IPO, Mecox had already abandoned support for its physical stores. *See, e.g.*, ¶¶ 32-37, 83-85. Thus, (1) the Complaint specifies the statements that Plaintiff contends were materially untrue and misleading; (2) the Complaint identifies the speaker as Mecox; (3) the statements and omissions were made in Mecox's October 26, 2010 Registration Statement; and (4) the Complaint explains the reasons the statements were materially untrue and misleading. *See, e.g.*, ¶¶ 28-77. Accordingly, Plaintiff has satisfied each element required under the Rule 9(b).

### C.     The Complaint Alleges Materially Untrue and Misleading Statements and Omissions

Defendants' arguments regarding the materiality of Plaintiff's allegations fail.   "To fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (internal quotation omitted).

Defendants have elected to simply ignore *Matrixx*, 131 S.Ct. 1309, the Supreme Court's new, controlling precedent on the materiality inquiry. *Matrixx* dramatically changed the landscape regarding materiality, ruling that a company must disclose adverse information even if the disclosure is "anecdotal" or not "statistically significant." *Id.* at 1319.  *Matrix*x forcefully supports the adequacy of Plaintiff's claims.  In *Matrixx*, a fraud case under Section 10(b) of the Securities Exchange Act, the court held that Plaintiff's claims satisfied the materiality inquiry given that the source, content, and context of adverse event reports led to a plausible link between use of defendant company's drug product and loss of smell. *Id.* at 1321-22.  Likewise,

Plaintiff's claims are bolstered by a Mecox franchisee and leading Chinese business journals, which were not available in English or digested by the market, in the context of physical store closures and decreased earnings. ¶¶45, 50, 56. The Second Circuit has held misstatements and omissions regarding such adverse trends to be material. *Blackstone,* 634 F.3d at 718, 722 (alleged misstatements and omissions regarding adverse trends of a business segment are material when that segment plays a "significant role" in the company's business and holding "[w]here the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower.").

### 1. Materially Untrue and Misleading Statements and Omissions Regarding Growth of Physical Stores

Defendants argue that there are no well-pled allegations to support Plaintiff's contention that the Registration Statement made materially untrue and misleading statements and omissions regarding the Company's network of physical stores. Def. Br. at 10. On the contrary, under the heading "*Expansion of Physical Store Network*," Mecox's Registration Statement noted:

> We have expanded and plan to continue to expand our store network in second- and third-tier cities by opening franchised stores in order to achieve high growth with minimum capital investment. As of June 30, 2010, we had 320 franchised stores and 158 directly operated stores. **We plan to open an additional approximately 20 franchised stores and an additional approximately 5 directly operated stores in 2010.**

¶35 (emphasis added). The Registration Statement also noted that Mecox's strategy was to expand the number of physical stores and promote "higher margin" sales, and such higher margin sales arose "through [the Company's] franchised and directly operated stores compared to [its] online platform." ¶¶2, 3, 34, 43.[4] In truth, Mecox closed 19 directly operated stores by

---

[4] Defendants argue that the "'higher margin' statement plainly applied only to the type of products Mecox planned to sell, not to the segment through which those products would be sold." Def. Br. at 2. While Defendants offer no support for this dubious opinion, the argument is, at best, a question of fact, which is improper for resolution at this stage. *See In re Evci Colleges Holding Corp., Sec. Litig.*, 469 F. Supp. 2d 88, 97-98 (S.D.N.Y. 2006).

third quarter 2010, leading to a 20% decline in revenue in the Directly Operated Stores segment of the business. ¶37.

Defendants first argue that the Registration Statement contains no misrepresentations regarding the Company's expansion of physical stores because the Company clearly conveyed to investors that Mecox was focused on its online platform.[5] Def. Br. at 10-11. This is a mischaracterization of the Complaint in an attempt to sidestep the actual misrepresentations regarding the growth of Mecox's brick and mortar stores. The Complaint alleges that Mecox's Registration Statement sets forth a business plan to grow its physical store network *in addition* to its established online platform, not in lieu of its online segment. ¶¶32-35.

Next, Defendants argue that the Registration Statement disclosed that the Company was transitioning away from directly-operated stores. Def. Br. at 11. Yet Defendants cannot point to a single place in the Registration Statement where they disclose to investors that the Company would operate fewer directly-operated stores. In fact, the Registration Statement addresses the Company's physical store segment by using tables to illustrate year-to-year growth in numbers of both directly-operated stores and franchise stores. ¶36. Although the tables clearly depict increased growth in the number of stores, Defendants argue that if one analyzes the tables in combination with each other, they apparently reveal upon some sort of comparative analysis that

---

[5] Defendants cite the "road show" presentation given by UBS prior to the IPO to argue that Mecox "was focused on its online product, rather than physical (retail) stores. Def. Br. at 11, n. 14. The Complaint never alleges that Mecox was not "focused" on its online platform. The Complaint alleges that "[i]n the Overview section of the IPO Prospectus defendants conditioned investors to believe that the Company was experiencing continued strong demand for its products and that the Company was operating in accordance with the guidance sponsored and/or endorsed by defendants during its investor presentations and "road show" presentations hosted at or before the time of the IPO." ¶29. The road show presentation states that Mecox "estimate[s] retail sales to grow 9% and 40% YoY in 2010/2011 but will not have profit contribution in 2010-2011E." *Id*. at 36. The road show presentation further reveals a revenue projection chart for Mecox's retail business that drastically trends upward each year in the amount of revenues and number of physical stores. *Id*. 36-37. In particular, the chart reveals that 2007 revenue was $4.8 million and the number of physical stores was 27 while projecting $92.2 million in expected revenues for 2012 express and 848 physical stores. *Id*. Thus, Defendants' argument that it somehow revealed prior to the IPO it was abandoning support for its physical store network is preposterous.

Defendants claim demonstrates Mecox operated 19 *fewer* stores as of June 30, 2010, than it had at the end of December 2009. Def. Br at 11.  Even if any of this were true factually, Defendants appear to confuse ordinary investors with statisticians. Class members simply are not required to conduct their own independent, supplemental analysis to glean the Company's supposedly true financial picture from plainly obfuscated data presented in the Registration Statement.[6]

The Registration Statement is materially misleading because it embeds the data regarding physical stores within misleading charts that convey a positive message to investors, *i.e*, the expansion of the physical store network promotes "higher margin" sales. Thus, the charts themselves are misleading. "Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990).  Therefore, "when examining a prospectus, even if particular statements, "taken separately, were literally true," they are actionable if "taken together and in context, [they] would have misled a reasonable investor about the nature of the [securities]." *Lowinger v. Pzena Inv. Mgmt., Inc.*, 341 Fed.Appx. 717, 719 (2d Cir. 2009), quoting *McMahan* at 579.  Here, given the context of the Registration Statement —listing expansion of physical store network as part of its growth plan—and the manner in which the Defendants presented the data—two charts illustrating, from left to right, the number of physical stores increasing year after year—Plaintiff has adequately pleaded that the statements

---

[6] Defendants rely on *Steinberg v. PRt Group, Inc*., 88 F.Supp.2d 294, 300 (S.D.N.Y. 2000), to argue that the Complaint must be dismissed because it directly contradicts the Registration Statement, and therefore, Plaintiffs' allegations need not be accepted as true. *Steinberg* is easily distinguished. Unlike here, the prospectus in *Steinberg* on its face directly contradicted plaintiffs' allegations. *Steinberg*, 88 F. Supp. 2d at 300 (The plaintiffs alleged that the defendants failed to disclose that they were reliant on third-party software; however, the prospectus stated, "the Company relies on licenses from outside parties for certain of its [Y2K] software tools.").

were materially misleading to a reasonable investor.[7] ¶35-36 (Total Physical Stores: Dec. '07-27; Dec. '08- 167; June '09- 220; Dec. '09- 402; June '10- 478).

Defendants argue that "the number of stores that the Company expected to open was also immaterial in light of the total number of existing stores…" Def. Br. at 12 n.15. This type of statistical significance argument was rejected outright by the Supreme Court in *Matrixx,* in which the Court ruled that anecdotal adverse reports that do not rise to the level of statistical significance cannot be dismissed as immaterial as a matter of law. Further, as materiality is a mixed question of law and fact, courts will not dismiss a securities complaint at the pleading stage unless reasonable minds could not differ on the importance of the statement or omission. *See Fuwei Films,* 634 F. Supp. at 439; *see also Blackstone, L.P.,* 634 F.3d at 718 ("Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower.").

Because the PSLRA's safe harbor for forward-looking statements is expressly inapplicable to forward-looking statements made in connection with an IPO, 15 U.S.C. § 77z-2(b)(2)(D), Defendants make a half-hearted argument that a single statement in the Prospectus is protected by the pre-PSLRA bespeaks caution doctrine. *See* Def. Br. at 12 ("statement in the Prospectus about potential new store openings is not actionable" because it is a forward looking statement protected by the 'bespeaks caution' doctrine."). This is incorrect. The Registration

---

[7] Defendants contend that the Prospectus revealed that their strategy of abandoning support for the physical store network and focusing on the online platform would affect gross margins. Def. Br. at 5. This argument is absurd. In support, Defendants submit a chart purportedly revealing Mecox's gross margins by business segment. *Id.* Whatever Defendants claim may be gleaned from their chart, the simple fact is it was not contained in the Registration Statement, and therefore it is of no consequence here. Rather, the chart was concocted by Defendants' outside counsel solely for presentation in this motion using no fewer than four separate pages of the Registration Statement. This is a far cry from meaningful disclosure in the Registration Statement and is certainly not the type of information that should have been apparent to a typical investor. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow.") *See also Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1297 (2d Cir. 1973) ("[I]t is not sufficient that overtones might have been picked up by the sensitive antennae of investment analysts").

Statement stated: "As of June 30, 2010, we had 478 stores in 182 cities in China. We plan to open an additional approximately 20 franchised stores and an additional approximately five directly operated stores in 2010." *Id*. Further, Defendants noted that "[w]e plan to continue to increase [franchising] agreements over time as part of our efforts to expand into less developed markets in China…" *Id*. The "bespeaks caution" doctrine does not apply to statements of present or historical facts. *In re Vivendi Universal, S.A. Sec. Litig*., 765 F. Supp. 2d at 568. Additionally, a statement containing references to both future and past or present conditions, the "bespeaks caution" doctrine may only extend to the prognostic portion. *Id*. at 568-69. Defendants' statement is not forward looking. The use of the word "continue" indicates that Defendants had already increased and were presently in the process of increasing franchising agreements. Thus, the statement is of current and historic fact and cannot be cured by cautionary language. *See Iowa Public Emp. Ret. Sys. v. MF Global, Ltd*., 620 F.3d 137, 142 (2d Cir. 2010).

Even if the Court finds the statement to be forward looking, it is not accompanied by sufficiently specific cautionary language. Defendants point to language in the Registration Statement that stated "there is no assurance that the intended growth of Mecox's store network can be achieved or will be profitable." Def. Br. at 12. Further, Defendants noted that "franchisees may not be able to meet their projections regarding store openings, sales and other aspects of franchising agreements." Def. Br. at 12. These so-called warnings tell investors nothing about potential or actual risks confronting Mecox at the time. More importantly, the Complaint alleges that at the time of the IPO, Mecox had already abandoned support for its physical stores, an approach that would negatively impact net revenues, gross margins, and cost of goods sold, and would increase the Company's dependence on its online segment—yet there was no cautionary language addressing this specific risk, which had already materialized, in the Registration

Statement. ¶¶56-59, 85. Accordingly, the "bespeaks caution" doctrine does not render Mecox's statement immaterial as a matter of law. *See Rombach,* 355 F.2d at 173.

### 2. Materially Untrue and Misleading Statements and Omissions Regarding Key Personnel

Although the Registration Statement boasted a "strong management team with extensive relevant experience," Defendants failed to inform investors that its vice-president and general manager in charge of physical store operations, Wang Hong Zheng, had left the Company two months prior to the IPO. ¶61.  Wang Hong Zheng was a former general manager for Mecox competitor Metersbonwe who had been lauded for the vast store expansion that made Metersbonwe's IPO possible.  In May 2009, Mecox hired Wang Hong Zheng to build and expand Mecox stores as he had done so successfully with Metersbonwe. ¶46.  Indeed, when Wang Hong Zheng began his tenure with Mecox, he announced his intentions to open 2,000 additional Mecox chain stores within 3 years. *Id.*  Wang Hong Zheng's involvement in the store side of the Mecox effort was critical, as noted in *The Economic Herald* article published October 28, 2010.[8] *Id.*  Despite his obvious importance to the retail store growth plan, which nose-dived after his departure, Mecox did not notify investors in the Registration Statement that he had left the Company. ¶36.

Defendants argue that the departure of an important senior level executive is not material.  Def. Br. at 23.  This argument fails.  In *Matrixx*, the Court held that a finding of materiality can be based upon the "source, content, and context" of reports of adverse events. *Matrixx* at 1321.  Here, the source, content, and context of reports all support a finding of materiality. As noted

---

[8] The article notes, "Wang planned to open nearly 2,000 stores within three years.  In fact, MecoxLane already developed a small number of retail outlets at that time.  Wang Hong Zheng's joining shows the great ambition of MecoxLane on retail outlets expansion.  This strategy was regarded by industry experts as [a strategy to] quickly increase the revenue and store scale for its planned IPO." ¶46.

above, a reputable Chinese business periodical, *The Economic Herald*, reported on October 28, 2010, that Wang Hong Zheng's leadership was vitally important to the expansion of Mecox's business—particularly, the growth of retail stores—and therefore a reasonable investor would consider his departure an important fact when making an investment decision. *Miller v. Apropos Tech., Inc.*, 2003 WL 1733558 at *5-6 (Mar. 31, 2003 N.D. Ill.).  ("[T]he failure to disclose this information [about executive leaving] in the Prospectus would render it materially misleading.").

Defendants next assert a premature truth-on-the-market defense concerning Wang Hong Zheng's departure. Def. Br. at 23.  While the Company never publicly revealed this pre-IPO departure, Defendants argue that pre-IPO articles -- published only in Chinese and translated in the course of Plaintiff's investigation and cited in the Complaint -- adequately informed investors in the United States of Wang Hong Zheng's departure.[9]  Defendants are wrong.  In *Fuwei Films*, a Section 11 case in which plaintiffs introduced pre-IPO articles for information regarding the company, the court found that "the publication of three newspaper articles—in Chinese—does not transform the information contained within the articles into "matters of general public knowledge" that may properly be imputed to Fuwei's stockholders. Accordingly, the Court holds that these articles do not excuse Defendants, as a matter of law, from their respective duties to disclose the allegedly misleading information identified by Plaintiffs in this case." *Fuwei Films*, 634 F.Supp.2d at 438.

When ruling on a motion to dismiss for failure to plead materiality, the Second Circuit has maintained that "[t]he truth-on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismiss[al]." *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 167 (2d Cir.

---

[9] By arguing that the July 29 article put investors on notice that Hong Zheng had left the Company, Defendants contradict another argument made by them -- that the article does not support Plaintiffs' claims because it merely expresses speculative opinion. Def. Br. at 15.  Defendants cannot laud the credibility of Plaintiff's source in one breath and bemoan it as meaningless conjecture in the next.  Both attacks should be disregarded.

2000).   Truth-on-the-market is very difficult to establish because "the corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Id.* Courts require a particularly credible and detailed disclosure when the misstatement or omission involves a company executive. *In re Comverse Tech., Inc. Sec. Litig.*, 543 F.Supp.2d 134, 151 (E.D.N.Y. 2008). (When those executives are valuable to a company's continued success, [the Comverse executive], likely was, this possibility is plainly material to investors. . . . Therefore, it has not been established as a matter of law that the April 17, 2006 Press Release "counter-balanced effectively" Comverse's prior misleading disclosures.").[10]

Here, Defendants were not the party responsible for the statement. Rather, an article that appeared in the Chinese-language article "MecoxLane's Executive Wang Hong Zheng Resigns Multi-channel Expansion of E-Commerce Gets In Trouble" reported Wang Hong Zheng's departure from the Company, which Defendants even now characterize as baseless "press speculation." Def. Br. at 15. There were no details and no confirmation of Wang Hong Zheng's departure and Defendants' own characterization of the article in their motion concedes the point. Surely, this "disclosure" did not sufficiently counter-balance the misleading information in the Registration Statement.

### 3.  Materially Untrue and Misleading Statements and Omissions Regarding Mecox' Revenue Growth

#### a)  Material Omissions of Financial Data from the Third and Fourth Quarters of 2010

---

[10] *See Fuwei Films*, 634 F. Supp. 2d at 437 ("Plaintiff attaches the five articles upon which he relied in drafting the CAC to his opposition brief. (*See* Pl.'s Opp'n Exs. 1–5.) Given Plaintiffs undisputed reliance on these articles in drafting the CAC, the Court finds nothing improper about considering these articles for purposes of  assessing the sufficiency of the CAC's pleadings.").

In the Registration Statement, Defendants advertised increasing year-to-year growth in net revenues from all three segments of the business: the online platform, directly operated stores, and franchised stores. ¶30. Undisclosed to investors, however, third quarter 2010 net revenues from the directly-operated stores fell 22.3% from the previous year and growth from the online platform fell flat in contrast with the year before. ¶31. With regard to its online platform in particular, the Company's Registration Statement projected "rapid growth," but in reality, Mecox's quarterly growth from their online platform would plateau by the fourth quarter 2010, which was well underway at the time of the IPO. ¶68.

Defendants have duties to disclose pursuant to the SEC's general regulation (17 C.F.R. Section 230.408) and Item 303(a) of Regulation S-K. "The SEC's general regulations expressly provide that '[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.'" *DeMaria v. Andersen,* 318 F.3d 170, 180 (2d Cir. 2003), citing 17 C.F.R. § 230.408.[11]  Item 303(a) requires Mecox to "[d]escribe any known trends or uncertainties that have had or that [Mecox] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii).  Defendants violated this duty.

---

[11] Defendants argue that "Item 303(a) of Regulation S-K requires a registrant to provide financial statements for the preceding three years and any time period that ended more than 135 days prior to the effective date. 17 C.F.R. §§ 210.3-12; 229.303." Def. Br. at 20. This is wrong.  Defendants' argument confuses two independent disclosure regulations –Item 303(a) of Regulation S-K (17 C.F.R. Section 229.303) and Regulation S-X (17 C.F.R. § 210.3-12) – in an effort to rewrite 303 and sidestep its obvious applicability.  The Complaint adequately alleges violations of 303(a).  By contrast, SEC Regulation S-X (17 C.F.R. § 210.3-12) mandates that financial statements that are more than 135 days old as of the effective date of the registration statement must be updated. Plaintiff does not allege a violation of Regulation S-X.  Moreover, Defendants ignore a third disclosure regulation which they also violated: SEC general regulation, 17 C.F.R. Section 230.408.  The fact that Mecox's 3Q:10 was not 135 days old when the IPO became effective does not relieve the Company of the disclosure requirements set forth in Item 303(a) and 17 C.F.R. § 230.408.  *See DeMaria*, 318 F.3d at 180.

In applying SEC general regulation 17 C.F.R. Section 230.408, the Court must determine whether the Complaint adequately alleges that the 3Q:10 and 4Q:10 undisclosed financial data was material in light of the financial information already disclosed to investors. *See DeMaria*, 318 F.3d at 180. "To do so, we engage in the familiar inquiry of whether there is 'a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Id*. (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). Further, whether or not a statement is materially misleading is a "fact-specific" inquiry. *See Basic,* 485 U.S. at 240. *See also Garber v. Legg Mason, Inc*., 537 F.Supp.2d 597, 611 (S.D.N.Y. 2008) (citations omitted) ("Ordinarily, materiality is a mixed question of law and fact left to the finder of fact to determine. Therefore, 'the standard for dismissing is high.'"); *see also DeMaria,* 318 F.3d at 180 ("Although Regulation S-X specifically sets forth circumstances under which stale financial information must be updated with interim data, *see* 17 C.F.R. § 210.3-12, it is not the only operative SEC regulation. The SEC's general regulations expressly provide that '[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.'").

Here, on November 29, 2010, just one month after the IPO, Defendants released unaudited financial results for 3Q:10, which ended on September 30, 2010, more than *three weeks prior* to the IPO. ¶78. Thus, results for 3Q:10 were in hand at the time of the IPO. Further, 4Q:10 was well underway by the time of the IPO. ¶68. Defendants failed to disclose that its results for 3Q:10 were out of line with the positive trends and financial information already reported in the Prospectus, casting serious doubt as to the Company's ability to maintain high

revenues and "high margin" sales. ¶2. On November 29, 2010, this came to light when the Company revealed it had experienced poor results for 3Q:10, including a decline in gross margin (by 400 basis points), a dramatic increase in expenses (including 19.8% in operating expenses and a 40.2% increase in compensation and benefit expenses), and a 22.3% fall in net revenues from its directly operated stores segment. ¶3. Due to these poor 3Q:10 results, it is substantially likely that the disclosure of this omitted financial data would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available at the time of the IPO.[12]

With regard to Item 303(a), "[t]he Second Circuit has noted that the aim of Item 303 is to explain irregularities in offering documents and prevent a company's last reported financial results from misleading potential investors." *In re Noah Educational Holdings, Ltd. Sec. Litig*., 08-9203, 2010 WL 1372709, at *6 (S.D.N.Y. Mar. 31, 2010). In *Blackstone,* 634 F.3d at 716, 718, the Second Circuit faced a similar issue regarding the pleading requirements necessary for a Securities Act complaint alleging a disclosure obligation under Item 303. *Id*. The Second Circuit reversed the district court's dismissal of plaintiffs' Securities Act complaint finding that plaintiffs had alleged a downward trend that was known by the defendants and existing at the time of the IPO, and that the trend or uncertainty in the market was reasonably likely to have a material impact on the defendant's financial condition. *Id*. at 716. The Second Circuit stated: "So long as plaintiffs plausibly allege that Blackstone omitted material information that it was required to disclose or made material misstatements in its offering documents, they meet the

---

[12] *See also In re Virgin Mobile USA IPO Litig.*, 2:07-cv-5619-SDW (D.N.J. March 9, 2009) (denying, via bench order, defendants' motion to dismiss. *Virgin Mobile* was a section 11 case where plaintiffs alleged that defendants had a duty to disclose financial results for a quarter that ended two weeks prior to the IPO, while defendants contended that they were only required to disclose the financial results if there was an "extreme departure" from known trends. *Id*. at 10, 61. Plaintiffs contended that even if the "extreme departure" standard was not met, it did not matter because defendants violated the SEC's general regulation (17 C.F.R. § 230.408) requiring defendants to disclose material information necessary to make the required statements not misleading. *Id*. at 64). See Exhibit 1 attached to the Declaration of Kim E. Miller.

relatively minimal burden of stating a claim pursuant to Section[] 11... Where the principal issue is materiality, an inherently fact-specific finding, the burden on plaintiffs to state a claim is even lower." *Id.* at 718. Thus, as Plaintiff has plausibly alleged that Mecox omitted material information that it was required to disclose and made material misstatements in its offering documents, Defendants' motion must also be denied.

Notwithstanding the fact that Defendants had a duty to disclose the available financial data from 3Q:10 and 4Q:10 pursuant to 17 C.F.R. § 230.408, Defendants ignore this clear obligation and instead complain that they were not required to disclose the financial results under Item 303(a) because they do not constitute an "extreme departure from the range of results which could be anticipated based on currently available information." Def. Br. at 21, citing *In re Turkcell Iletisim Hizmetler A.S. Sec. Litig*., 202 F.Supp.2d 8, 13 (S.D.N.Y 2011). The "extreme departure" language is not contained in Item 303(a) itself but rather derived from *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996).[13]

Tellingly, the "extreme departure" language is nowhere mentioned by the Second Circuit in its recent controlling opinion regarding Item 303. *See Blackstone*, 634 F.3d at 716. To state a claim under Item 303, Plaintiff is *only* required to allege that a trend is both (1) presently known to management and (2) reasonable likely to have material effects on registrant's financial condition. *Id*.[14] In any event, to the extent that *Turkcell* is still good law, it is not controlling here,

---

[13] Tellingly, the *Shaw* court noted "the prospectus in question was filed 11 days prior to the end of the quarter in progress. The results for that quarter turned out to be, by all accounts, the product of more than a minor business fluctuation" and upheld the plaintiff's complaint, noting issues of materiality "preclude terminating" the litigation at the motion to dismiss stage. *Shaw*, 82 F.3d at 1211.

[14] The SEC's interpretive release regarding Item 303 does not impose a disclosure duty only where financial results would represent an extreme departure from the range of results which could be anticipated based on currently available information. *See Blackstone*, 634 F.3d at 716. "The SEC's interpretive release regarding Item 303 clarifies that the Regulation imposes a disclosure duty 'where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations.'" *Id*. (citing Management's Discussion and Analysis of Financial Condition and

and is readily distinguishable.[15]   In the alternative, regardless of whether the Complaint's allegations regarding undisclosed information constitute violations of Item 303, the SEC's general regulation (17 C.F.R. § 230.408), which requires Defendants to disclose material information necessary to make the required statements not misleading, was also violated by Defendants.

Defendants also contend that they were not required to disclose the financial results for 4Q:10 because it would not be reasonable to require them to accurately project revenue numbers for their online platform only three weeks into a quarter. Def. Br. at 22. This argument ignores the fact that Mecox had results from 3Q:10 in hand, which revealed a drastically different picture of the Company's then-current financial status. No projections were necessary. Further, 4Q:10 was well underway, Mecox had the necessary information to see, *inter alia*, that growth in the Company's online segment was unsustainable, and would cease following the third quarter, such that online revenues for the fourth quarter would be flat and that purported revenues and net income growth were unsustainable. ¶¶3, 68. The Complaint further alleges that the Company's reported revenues in the Registration Statement were directly contradicted by information provided to the People's Republic of China's Administration for Industry and Commerce. ¶¶3, 68.

---

Results of Operations, Securities Act Release No. 6835, Exchange Act Release No. 26,831, Investment Company Act Release No. 16,961, 43 SEC Docket 1330 (May 18, 1989)).

[15] The *Turkcell* court found that a one-time drop in operating income, coupled with no declines in any other financial indicator, did not represent an extreme departure from the expected range of results presented by the prospectus. 202 F.Supp.2d at 13. By contrast here, Plaintiff has alleged material declines related to several financial indicators (a decline in gross margin by 400 basis points, a 19.8% increase in operating expenses, a 40.2% increase in compensation and benefit expenses, and a 22.3% fall in net revenues from its directly operated stores segment) in possession of Defendants at the time of the IPO representing an extreme departure from the expected range of results presented by the Registration Statement. ¶¶1-3, 31, 109, 115, 122. Further, Plaintiff alleges that the trend of declining financial results was known by Defendants and continued into the 4Q:10, which was well underway at the time of the IPO. ¶¶3, 31, 109, 115, 122.

The true but undisclosed facts were that Defendants could not operate the Company according to plan; expenses had risen well above expectations; gross margins had fallen well below plan and below historical trends; and Defendants could not operate the Company in accordance with the expectations sponsored and/or endorsed by Defendants. ¶¶109, 115, 122. The Complaint alleges that Mecox omitted material information regarding the third and fourth quarters from the Registration Statement, which information was required to be disclosed pursuant to 17 C.F.R. § 230.408 and/or 17 C.F.R. § 229.303(a)(3)(ii), and that this undisclosed information represented a trend of declining financial results reasonably likely to have a material effect on the results disclosed in the Registration Statement. *See* ¶¶109, 115, 122.

### b) Materially Untrue and Misleading Statements and Omissions Regarding Dependence on Online Platform

The Registration Statement conveyed to investors a decline in Mecox's dependence on its online platform noting that the percentage of revenue attributable to online sales had steadily decreased year-to-year from 92.2% in 2007, to 86% in 2008, to 72.8% in 2009. ¶39.[16] Defendants did not, however, inform investors that the third quarter financial results for Mecox, demonstrated that online platform revenues jumped back to nearly 80%, which led investors to believe that part of the Company's growth strategy was to promote sales from their brick and mortar stores. ¶¶35, 40.

### c) Materially Untrue and Misleading Statements and Omissions Regarding Expenses

Defendants misrepresented the nature of the Company's rising expenses. The Registration Statement conveyed that expanding directly-operated stores would increase expenses and opening franchise stores would minimize them. ¶¶38, 41.   Undisclosed to investors, however, expenses climbed dramatically in the quarter preceding the IPO, even though

---

[16] Defendants concede this point by not addressing it in their motion to dismiss.

Mecox halted the expansion of directly-operated stores and increased the number of franchise stores. *Id.*

Defendants argue that the Registration Statement adequately disclosed Mecox's increased expenses and that they were *not* a result of closing directly-operated stores and opening franchise stores. Def. Br. at 16.  In support of their argument, Defendants point to a sentence that denotes the reasoning for increased expenses, but omit the key portion that indicates rising expenses were attributable to the operation of directly-operated stores. Def. Br. 16-17.  Thus, when read in its entirety, the statement from the Registration Statement highlights expenses increasing from its directly-operated retail stores.[17]   In reality, the increased expenses had nothing to do with the expansion directly-operated stores, because expenses rose dramatically in 3Q:10, yet Mecox completely halted the expansion of directly-operated stores, and even closed 19 of them.  ¶¶37, 38.  Second, the Registration Statement misrepresented that "opening franchised stores allows us to minimize capital investment and rental and staffing expenses." ¶41.  In contrast, opening new franchised stores in the third quarter of 2010 *increased* Mecox's expenses, refuting Defendants' statement in the Registration Statement. ¶41.  Thus, Defendants followed a business plan that they expressly informed investors in the Registration Statement would decrease rather than increase their expenses, but Mecox's expenses rose drastically.  ¶¶38, 41, 42.

### 4.   Materially Untrue and Misleading Statements and Omissions Regarding the Company's Marketing

Defendants claim that Plaintiff's allegations that Mecox made materially misleading statements regarding its marketing strategy are conclusory. Def. Br. at 23-24.  To the contrary,

---

[17] "With the expansion of our business, we have experienced increases in operating expenses, including compensation and benefit expenses for our retail and corporate office employees, **rental of and depreciation related to our directly operated stores**, call centers, logistics center and corporate facilities, marketing and advertising expenses."  Registration Statement at 57.  The bolded language indicates the portion of the statement omitted from Defendants' quotation in their brief.

Plaintiff bases the allegations upon the reports of a leading business periodical and the testimony of a Mecox franchisee. The Registration Statement boasted an array of marketing approaches such as "through online advertising, targeted distribution of emails, SMS, catalogs, print media advertising and out-bound calls." ¶69. Moreover, the Registration Statement underlined the importance of brand image, and a plan to boost its brand image by "marketing and advertising campaigns to associate these brands with trendy fashion events and cultural occasions." ¶70. But just two days after the IPO on October 28, 2010, an *Economic Herald* article entitled, "Gu Bei Chun (Alfred Gu) – MecoxLane Bet on Brick and Mortar Stores," reported that, "[c]urrently, MecoxLane has no plan to advertise for the Company image." ¶¶24, 71. As further evidence of Mecox's lack of an effective marketing strategy, CW1, a Mecox franchisee, alleged that Mecox did not promote its physical stores.[18] ¶¶56, 71. CW1 claims that the trendy brand image that the Registration Statement planned to boost with marketing and advertising campaigns was not promoted in the franchise stores because by the time the clothing arrived at the stores, the fashion trends had passed. ¶57.

Because marketing is vital to the success of a retail clothing business, Plaintiff adequately alleges untrue statements and omissions regarding its marketing plan were material. Although Defendants argue that the Complaints' allegations lack specificity, courts have held similar statements actionable. In *Marsh & McLennan*, the Court found the following statements to be

---

[18] Defendants rely on *In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 510 (S.D.N.Y. 2010), for the proposition that CW1 is "nothing more than a disgruntled franchisee and [his/her statements] say nothing about Mecox's strategy with respect to franchised stores, let alone Mecox's purported sudden shift in focus from directly operated stores *towards* other segments." Def. Br. at 16. In *IndyMac*, the court disregarded a CW's statements because the "fact that one IndyMac employee believed that appraisals were 'shoddy' says nothing at all about whether the appraisals were made in accordance with USPAP [Uniform Standards of Professional Appraisal Practice]." *IndyMac*, at 510. Accordingly, such a vague statement was not relevant to the allegations made by the plaintiffs that appraisals were not made in accordance with USPAP. *Id*. Although CW1 statements are not even necessary here, the Complaint alleges that Mecox abandoned support for its physical store network. ¶85. Thus, the statements of CW1 are directly related and relevant to whether Mecox actually abandoned support for its physical stores. ¶¶56-59. Accordingly, *IndyMac* is not persuasive or applicable.

materially misleading to investors: "'[i]n a market where insurance rates are rising and coverage is more difficult to obtain, [company] provides value to clients by developing the most cost-effective responses to the risks they face,' and that the company reached 'across markets to tap into risk capital wherever it exists, seeking the best terms, conditions, and prices." *In re Marsh & Mclennan Cos, Inc. Sec. Litig.*, 501 F.Supp.2d 452, 475 (S.D.N.Y. 2006). The Court reasoned that because these statements were "directly contradicted by the Complaint's allegations," they were actionable. *Id.* Similarly here, the Registration Statement's statements "[w]e plan to acquire new customers on a cost-effective basis by enhancing our online advertising efforts" and "[w]e will launch marketing and advertising campaigns to associate these brands with trendy fashion events and cultural occasions" are directly contradicted by the Complaint's allegations that Mecox never planned to take these marketing steps.[19] ¶70-71.

### 5. Materially Untrue and Misleading Statements and Omissions Regarding the Company's Internal Controls and Due Diligence

Defendants assert that Plaintiff makes conclusory allegations of materially untrue and misleading statements regarding the Company's internal controls and due diligence. Def. Br. 23-24. This argument is devoid of any supporting analysis. Rather, Defendants merely aver that Mecox made "robust disclosures" regarding business strategy and financial statements, without pointing to any particular language in the Prospectus. Def. Br. at 24. The Registration Statement represented to investors that Mecox had a "proprietary management information system" in place

---

[19] Defendants cite *Rusyniak v. Gensini*, 629 F.Supp. 2d 203, 232 (N.D.N.Y. 2009), apparently for the proposition that Plaintiffs' uncertified translation of the *Economic Herald* article revealing that Mecox had no plans for marketing the Company image is incorrect. Def. Br. at 24 n.24. In *Rusyniak*, defendants argued that certain causes of action under Panamanian law had accrued, but they did not provide the court with a certified translation of the relevant portion of Panamanian law. *Rusyniak*, 629 F.Supp.2d at 232. This fact-based argument did not rule the day; the complaint was sustained in part, supporting Plaintiff here. Of course, deciding which translation controls (and whether the variations are meaningfully different) and what impact such information has on the case is a pure question of fact, which cannot be decided at this stage. *See Mitsubishi Chem. Corp. v. Barr Laboratories, Inc.*, 2010-1432, 2011 WL 3288394, at *4 (Fed. Cir. Aug. 2, 2011) ("The fact-finder's selection of a particular translation as the best translation of a foreign language reference raises pure questions of fact."); *see also Gray v. Noholoa*, 214 U.S. 108, 112 (1909).

to monitor inventory and gross margins, and that their online platform allowed them to collect data "effectively and continuously."   ¶¶72, 73.   Accordingly, the Registration Statement conditioned investors to believe that Mecox collected, analyzed and distributed accurate, up-to-date information regarding Mecox's finances. ¶74.

The Complaint adequately alleges Defendants made materially untrue and misleading statements and omissions.  For example, the fiscal quarter preceding the IPO concluded on September 30, 2010, nearly an entire month before the release of the Registration Statement. ¶8. However, despite their "proprietary management information system that allegedly worked effectively and continuously, Defendants did not include in their Registration Statement financial results from that quarter. ¶76.  Additionally, adequate internal controls and due diligence would have prevented the Company from reporting a different net income in their Registration Statement than they reported to the Chinese government. ¶76 (Registration Statement noted over $3.5m in net income for the year 2008, while Mecox's filings with the Administration for Industry and Commerce in China reported just a little over $825,000).

### D.      Loss Causation Does Not Form a Basis for Dismissal

Despite the dramatic stock drop upon the revelation of the truth in this case (¶81), Defendants nevertheless urge dismissal on causation grounds in this 1933 Act case.  "As an initial matter, loss causation is not an element of a claim under … Section 11." *Giant Interactive*, 643 F.Supp.2d at 571.  *See also Levine v. AtriCure, Inc.,* 508 F.Supp.2d 268, 272 (S.D.N.Y. 2007) ("Loss causation ... is not an element of a Section 11 claim under the Securities Act."), *citing Flag Telecom,* 411 F.Supp.2d at 382. Accordingly, as Defendants fail to point out, there is no requirement to plead loss causation in the Complaint.

This Court has held that because it is unnecessary to plead loss causation to maintain claims under Section 11, the affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion. *Giant Interactive*, 643 F.Supp.2d at 572. The Second Circuit has characterized a defendant's burden of showing the absence of loss causation in the Securities Act context as the "'heavy burden' of proving negative causation." *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F.Supp.2d 404, 418 (S.D.N.Y. 2009), citing *Flag Telecom,* 574 F.3d at 36. A court may only dismiss a Securities Act claim based on negative causation where "facts supporting the defense appear on the face of the complaint, and it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *In re Britannia*, 655 F.Supp.2d at 418, quoting *United States v. Space Hunters, Inc.,* 429 F.3d 416, 426 (2d Cir. 2005)(emphasis added). "A causation defense prevails if the defendant 'proves' that an otherwise recoverable loss was not caused by the alleged misstatement or omission." *Iowa Public Employees' Ret. Sys.*, 620 F.3d at 145.

Defendants argue that the Complaint must be dismissed because any losses associated with Mecox's drastic decline in stock value were fully disclosed in the Prospectus and thus, "Plaintiff cannot demonstrate that any revelation in the Press Release caused its loss." Def. Br. at 19.  Defendants cannot merely assert, as they have done here, that the decline in Mecox's stock price cannot be attributed to the revelation of the Registration Statement's misrepresentations and omissions of facts. Defendants must *prove* that *the Complaint itself* demonstrates that a factor other than those alleged is *completely responsible* for Plaintiff's loss. Defendants have not and cannot do so.  Defendants simply argue that because the disclosures of the true facts in the November 29 release do not address the departure of Hong Zheng, Mecox's marketing plan, or Mecox's internal controls, Mecox's stock drop cannot be attributed to these issues. Def. Br. at

23.  These issues, however, were directly related to Mecox's poor financial condition in the months preceding their IPO, and Mecox illuminated these problems by belatedly disclosing its financial condition in the November 29 release.  A Plaintiff does not fail to satisfy loss causation simply because every prior representation alleged in the complaint does not have a mirror-image disclosure preceding a decline in share price.  *See, e.g., In re Motorola Sec. Litig.,* 505 F.Supp.2d 501, 542–43 (N.D. Ill. 2007).

Defendants attempt to rely on *In re Shoretel Inc.*, No. 08-00271, 2009 WL 248326 at *5, (N.D. Cal. Feb. 2, 2009), and *Iowa Public Employees' Ret. Sys.,* 620 F.3d at 145, to support their argument that Plaintiff's Section 11 claim should be dismissed at the Rule 12(b)(6) stage.  In *Shoretel* the court dismissed plaintiffs' Section 11 claims because plaintiffs mistakenly alleged that certain losses occurred as a result of a press release, which on its face did not disclose misrepresentations, instead of as a result of the revelation of previously undisclosed facts from the registration statement. *Shoretel*, 2009 WL 248326 at *5. This was a simple typographical error in pleading and was easily cured. Therefore, *Shoretel* is inapposite and does not support Defendants' express position that Plaintiff's Section 11 claims should be dismissed here because the "press release did not disclose any of the purported misrepresentations."[20] Def. Br. at 20.

Defendants' reliance on *Iowa Public Employees' Ret. Sys.* for the proposition that all claims warrant dismissal where each particular misrepresentation was not revealed in a corrective disclosure is similarly misplaced.  In *Iowa Public Employees' Ret. Sys.*, a broker avoided certain trading restrictions and accumulated huge losses for MF Global, who was responsible for settling the broker's trades at the clearinghouse. *Iowa Public Employees' Ret. Sys.*, at 139.  Plaintiffs claimed that the prospectus failed to disclose that anyone with a proper

---

[20] Co-Lead Counsel in this case, Kahn Swick & Foti, LLC, was also lead counsel in the *Shoretel* case. Plaintiff's Section 11 claims in *Shoretel* were easily cured by lead counsel in the second amended complaint. *See Shoretel* Motion to Dismiss Order, attached to the Declaration of Kim E. Miller as Exhibit 2.

password could access client accounts and trade in them. *Id*. at 144.  The Court found that their

loss—and the incident that caused the drop in stock price—had nothing to do with client fund

misappropriation or security risks because the broker had the authority to make trades. *Id*. at 145.

Here, in contrast, the impetus for the drop in share price was release of Mecox's financial results

from the third quarter.  Every misrepresentation or omission raised in the Complaint contributed

to the poor financial results that Mecox withheld from investors.  In short, Defendants cannot

meet their "heavy burden" of demonstrating an affirmative negative causation defense at this

early stage.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d at 36.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in full.[21]


Dated: September 30, 2011                          Respectfully submitted,

                                                   **KAHN SWICK & FOTI, LLC**

                                                   /s/ Kim E. Miller
                                                   Kim E. Miller
                                                   500 Fifth Ave., Suite 1810
                                                   New York, NY 10110
                                                   Telephone:  (212) 696-3730
                                                   Facsimile:  (504) 455-1498
                                                   Kim.Miller@ksfcounsel.com

                                                   -and-

                                                   Lewis S. Kahn
                                                   206 Covington Street
                                                   Madisonville, Louisiana 70447
                                                   Telephone (504) 455-1400
                                                   Facsimile: (504) 455-1498
                                                   Lewis.Kahn@ksfcounsel.com

---

[21] In the event that all or any portion of the Complaint is dismissed, Plaintiff respectfully seeks leave to amend under Rule 15.

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**
Jeremy A. Lieberman
100 Park Avenue
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

-and-

Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:     (312) 377-1181
Facsimile:     (312) 377-1184
pdahlstrom@pomlaw.com

*Co-Lead Counsel for Lead Plaintiff and the
Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this opposition brief was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on September 30, 2011.


<u>/s/ Kim E. Miller</u>
Kim E. Miller